[L. A. No. 1234.    Department Two.—August 20, 1904.]

FIRST NATIONAL BANK OF RIVERSIDE, Respondent, v. JOSEPH EASTMAN et al., Defendants; HUGH LENNOX, Appellant.

Fraudulent Conveyance to Non-Resident—Action by Defrauded Creditor—Publication of Summons.—Real estate situated within this state, and fraudulently conveyed to a non-resident for the purpose of defrauding the creditors of the grantor, may be reached in an action by one who shows himself to be a defrauded creditor, by constructive service of the summons upon the non-resident grantee by due publication thereof.

Id.—Effect of Conveyance—Allegation and Proof of Indebtedness Essential.—The fraudulent conveyance is good as between the parties, and as to all persons except the creditors thereby defrauded; and in an action to set it aside it is essential that a plaintiff bank should allege and prove that it was a creditor of the grantor before it will be allowed to question the conveyance.

Id. — Insufficient Averment, Proof, and Finding — Void Personal Judgment against Non-Resident.—Where there is no allegation, evidence, or finding that the plaintiff was a creditor of the grantor, and the only allegation, evidence, and finding are, that the plaintiff procured a mere void personal judgment against the non-resident grantor, under an order for publication of summons, and personal service upon him out of the state, which is only the equivalent of publication, a judgment setting aside the fraudulent conveyance in favor of the plaintiff must be reversed.

Id.—Judgment In Rem—Attachment—Personal Judgment.—A judgment in rem may be obtained against property within the jurisdiction of the court belonging to an absent non-resident, or where the property of the non-resident is attached the court may in the suit dispose of the seized property against the non-resident; but it cannot go farther and render a personal judgment against him, except one which can be enforced as to the seized property against such non-resident.

Id.—Action by General Creditor of Non-Resident Grantor—Exception to Rule Requiring Judgment.—An action may be maintained by a general creditor of a non-resident grantor to set aside his fraudulent conveyance to a non-resident grantee. Such an action is a clear exception to the general rule which requires a previous reduction of the claim to judgment, for the reason that no personal judgment can be obtained against the non-resident grantor.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. Lucien Shaw, Judge presiding.

The facts are stated in the opinion.

W. J. McIntyre, and J. S. Chapman, for Hugh Lennox, Appellant.

Flint & Barker, for Respondent.

COOPER, C.—This action was brought to have a certain deed made by defendant Eastman to defendant Lennox set aside as fraudulent and to have the premises therein described declared to be subject to the lien of an attachment procured by plaintiff against Eastman. The court filed findings, upon which judgment was entered in favor of the plaintiff as prayed. Defendant Lennox made a motion for a new trial, which was denied, and this appeal is by Lennox from the judgment and order denying his motion. It is contended by the appellant that the pleadings and evidence do not sustain the findings and that the findings do not sustain the judgment, and, as this involves the merits of plaintiff's case, we will examine it somewhat in detail.

Without separating the allegations of the complaint from the findings, it is sufficient to state that the facts alleged and found, so far as material to the questions discussed, are substantially as follows: On June 9, 1894, defendant Eastman made and delivered his promissory note to plaintiff's assignor. On November 30, 1895, Eastman was the owner of the lands described in the complaint, and, in consideration of certain bonds of the value of seventy-five hundred dollars, he executed a deed of the same to defendant Lennox. On January 1, 1896, the deed so made to Lennox had been delivered and duly recorded in the county in which the lands are situated. On the seventeenth day of June, 1896, the plaintiff commenced an action in the superior court of Riverside County against Eastman alone, to recover judgment upon the said promissory note. Eastman then resided in Chicago, Illinois. A summons was issued in said action on the day it was commenced, and on the eighteenth day of June, 1896, an attachment was issued and levied by the sheriff upon the lands described in the complaint. On December 5, 1896, an affidavit was filed upon which an order of publication of summons was made. The summons was afterwards personally served upon Eastman in Chicago. On September 25, 1897, a judgment by default was

given in said action against Eastman for the amount due upon said promissory note, $6,727.90 and costs. On October 18, 1897, execution was issued upon the said judgment and returned by the sheriff with his certificate that after diligent search he could not find any real or personal property of Eastman out of which to make said execution, and hence he returned the same unsatisfied. Thus ended the proceedings in the former action against Eastman. The land stood on the records in the name of Lennox when the suit was commenced; Lennox was not made a party, and Eastman never appeared.

The case at bar was commenced October 21, 1897. The complaint sets up facts fully as herein stated as to the former action and judgment against Eastman. It is further alleged that the deed made by Eastman to Lennox was without consideration, and for the purpose of hindering, delaying, and defrauding the creditors of Eastman and particularly this plaintiff, and that Eastman is still the owner of the property. At the time of the commencement of this action both defendants were residents of Chicago, Illinois, and an order of publication of summons was made and said summons duly published. Eastman made default, but defendant Lennox appeared and answered, denying the material allegations of the complaint. There is no doubt that real estate situated within the state and fraudulently transferred to a non-resident may be reached by constructive service of summons on the non-resident owner, for the reason that, as to the creditor, the land is deemed to be the property of the party so transferring it. It is a general principle that the process of the courts may reach and seize the property of non-residents within their jurisdiction. The property being under the protection of the courts and laws of the state must be subject to its rules and regulations, and the payment of the debts of its citizens.

The plaintiff might under the proper circumstances maintain an action to set aside a conveyance made by its debtor for the purpose of defrauding it. The conveyance made by Eastman to appellant, although it might be void as to creditors, was good between the parties, and vested the legal title in appellant. It was good as against the grantor, his heirs, executors, administrators, and persons claiming under him. (Bump on Fraudulent Conveyances, sec. 433.) Such con-

veyance was good as to all persons except those who stood in such relation to the property or the parties as to be entitled to question it.in a proper proceeding. (Bump on Fraudulent Conveyances, sec. 449, and cases cited; *Sexey* v. *Adkinson,* 34 Cal. 350;[1] *Frink* v. *Roe,* 70 Cal. 308.) It was therefore essential for the plaintiff to allege and prove that it was a creditor of Eastman before it will be allowed to question the conveyance to appellant.

There is no allegation, evidence, or finding that the plaintiff was such creditor. The allegation, evidence, and finding are, that plaintiff procured the judgment against Eastman in the manner as hereinbefore set forth in the suit against Eastman alone. This judgment was against a non-resident of the state by publication of summons. The summons was personally served in Chicago, but this was only equivalent to publication and deposit in the post-office. (Code Civ. Proc., sec. 413.) It did not give the court any greater jurisdiction as to Eastman than service by publication in compliance with the order would have done.

A judgment *in rem* may be obtained against property within the jurisdiction of the court belonging to an absent non-resident; or where the property of such non-resident is seized by the process of attachment, the court may in such suit dispose of the property, but it cannot go farther and give a personal judgment, except one which can be enforced as to the seized property against such non-resident. In the suit against Eastman the court might have directed a judgment which would justify the sale of the property to satisfy the plaintiff's claim, and the purchaser would have taken the right, title, and interest of Eastman in and to the property. Of course, such proceedings would not have affected the right of appellant, for the reason that he was not a party to the litigation. But the court did not by its judgment make any direction as to the property, nor was it attempted to sell it by virtue of the execution. The execution was returned unsatisfied, and hence the proceedings as to the first suit ended. The court had no jurisdiction as to the person of Eastman, and hence no power to order a personal judgment as such against him. The doctrine is thus stated by Mr. Justice Field (in *Pennoyer* v. *Neff,* 95 U. S. 714): "The law assumes that

[1] 91 Am. Dec. 698.

property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.* But where the entire object of the action is to determine the personal rights and obligations of the defendants—that is, where the suit is merely *in personam*—constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one state cannot run into another state and summon parties there domiciled to· leave its territory and respond to proceedings against them. Publication of process or notice within the state where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the state and process published within it are equally unavailing in proceedings to establish his personal liability.''

It is said by Judge Cooley in his work on Constitutional Limitations (6th ed., p. 498): ''The statute may give effect so far as the subject-matter of the proceeding is within the limits, and therefore under the control of the state; but the notice cannot be made to stand in the place of process so as to subject the defendant to a valid judgment against him personally. In attachment proceedings the published notice may be sufficient to enable the plaintiff to obtain a judgment which he can enforce by sale of the property attached; but for any other purpose such judgment would be ineffectual.'' And the courts universally hold that such personal judgment is void as to all matters and things, except as to the disposition of the property seized. (*Belcher* v. *Chambers,* 53 Cal. 635; *Galpin* v. *Page,* 18 Wall. 350; *Brown* v. *Campbell,* 100 Cal. 641;[1] *Graham* v. *Spencer,* 14 Fed. 606; *Manchester* v. *McKee,* 9 Ill. 520.) And a judgment so obtained is not evidence as to

[1] 38 Am. St. Rep. 314.

the personal obligation of the parties. (Jones on Evidence, sec. 623; Black on Judgments, sec. 904; note to *Pinney* v. *Providence Loan etc. Co.,* 50 L. R. A. 577; *Cooper* v. *Reynolds,* 10 Wall. 308.) In the latter case, in speaking of such judgment, the supreme court of the United States said: "The judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in the suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court or in any other, nor can it be used as evidence in any other proceeding not affecting the attached property, nor could the costs in that proceeding be collected by defendant out of any other property than that attached in the suit."

In speaking of the judgment in such case the supreme court of Indiana said (*Quarl* v. *Abbett,* 102 Ind. 240[1]): "In such case the court in ascertaining the amount due does not proceed against the person, but simply ascertains the amount that shall be adjudged a lien on the property or that shall measure the extent of the creditor's claim against it. The statement of the amount in the finding and decree of the court in such cases is not a personal judgment, but is a mere statement of a finding upon one of the questions in the case."

In *Manchester* v. *McKee,* 9 Ill. 520, the supreme court of Illinois said "that a judgment in an attachment suit where the defendant has not been brought into court so as to make it a personal judgment is not evidence of the debt upon another suit brought upon that record."

The finding therefore "that on the 25th day of September, 1897, a judgment was duly given and made by the said superior court of the county of Riverside, state of California, in an action in favor of plaintiff the First National Bank of Riverside and against the said defendant Eastman," is not supported by the evidence.

A judgment duly given and made imports a judgment which is the final determination of the rights of the parties. Respondent argues that a general creditor cannot come into court to have a fraudulent conveyance set aside, and hence if the judgment against Eastman is not a valid judgment, the plaintiff would be without a remedy because he could not

---

[1] 52 Am. Rep. 662, and note.

get a valid personal judgment against Eastman. It is the general rule that a creditor must reduce his claim to a judgment before he can maintain an action of this character. But to this rule there is a well-established exception. Where the defendant is a non-resident, a personal judgment cannot be obtained against him, and therefore the fact of his being a non-resident creates an exception to the rule, and such action can be maintained without the creditor having obtained a judgment. (*Scott* v. *McMillen,* 1 Litt. 302;[1] *Quarl* v. *Abbett,* 102 Ind. 240;[2] *Taylor* v. *Branscombe,* 74 Iowa, 534; *Kipper* v. *Glancey,* 2 Blackf. 356; *Anderson* v. *Bradford,* 5 J. J. Marsh. 69; *Pendleton* v. *Perkins,* 49 Mo. 565.)

In *Quarl* v. *Abbett,* 102 Ind. 240,[2] the court said, in speaking of the rule: "Doubtless the general rule was as stated by counsel; whether it prevails under the reform system of procedure is quite another question; but, without stopping just now to decide that question, and, for the present granting that the rule does prevail, still it never did govern such a case as this—manifestly it could not apply—for against a non-resident the creditor could not possibly obtain a personal judgment. It is hardly necessary to cite authorities to prove that two notable exceptions to the rule were where the debtor was dead or 'beyond seas.' "

In this case if the plaintiff under proper pleadings establishes the fact that it was a creditor of Eastman at the time of the transfer, and that the transfer was of the character alleged, it would seem to be entitled to relief as to the parties to this suit.

It follows that the judgment and order should be reversed.

Harrison, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Henshaw, J., McFarland, J., Lorigan, J.

---

[1] 13 Am. Dec. 239.          [2] 52 Am. Rep. 662, and note.